IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:26-CV-139-GNS

*ELECTRONICALLY FILED*

RICHMOND NATIONAL INSURANCE COMPANY — PLAINTIFF

v.

MADHUBA HOTELS, INC. — DEFENDANT
Serve: Darshan Patel
4646 Scottsville Road
Bowling Green, KY 42104

and

CHOICE HOTELS INTERNATIONAL, INC. — DEFENDANT
Serve: United States Corporation Company
315 High Street
Frankfort, KY 40601

and

CHOICE HOTELS INTERNATIONAL SERVICES CORP. — DEFENDANT
Serve: Corporation Service Company
315 High Street
Frankfort, KY 40601

and

ESQUIRE, INC. d/b/a DOLPHIE'S LOUNGE — DEFENDANT
Serve: Ronaldlette Litchford
458 Old Lovers Lane
Bowling Green, KY 42103

and

RONANN BUNGER, as Administratrix of the
ESTATE OF BRADLEY DONALD BUNGER — DEFENDANT
Serve: Ronann Bunger
716 Steeplechase Way
Bowling Green, KY 42103

and

RONANN BUNGER, as Mother, Next Friend, Conservator
and Guardian of B.C.B., a minor child DEFENDANT
Serve: Ronann Bunger
716 Steeplechase Way
Bowling Green, KY 42103

and

RONANN BUNGER, as Mother, Next Friend, Conservator
and Guardian of B.C.B., a minor child DEFENDANT
Serve: Ronann Bunger
716 Steeplechase Way
Bowling Green, KY 42103

and

RONANN BUNGER, as Mother, Next Friend, Conservator
and Guardian of B.C.B., a minor child DEFENDANT
Serve: Ronann Bunger
716 Steeplechase Way
Bowling Green, KY 42103

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

Comes the Plaintiff, Richmond National Insurance Company ("RNIC"), by counsel, and for its Complaint for Declaratory Judgment, states as follows:

**PARTIES**

1. Plaintiff RNIC is a licensed insurance company incorporated in the State of New Hampshire, with its principal place of business located in the Commonwealth of Virginia. RNIC is an eligible surplus lines insurer in the State of Kentucky. For the purposes of diversity, RNIC is a citizen of both New Hampshire and Virginia.

2. Defendant Madhuba Hotels, Inc. ("Madhuba"), is a Kentucky corporation with a principal place of business located in the State of Kentucky. Defendant Madhuba's registered agent for service of process is Darshan Patel, 4646 Scottsville Road, Bowling Green, KY 42104.

3. Defendant Choice Hotels International, Inc. ("Choice"), is a Delaware corporation with a principal place of business located in the State of Maryland. Defendant Choice's registered agent for service of process is United States Corporation Company, 315 High Street, Frankfort, KY 40601.

4. Defendant Choice Hotels International Services Corp. ("CHISC") is a Delaware corporation with a principal place of business located in the State of Maryland. Defendant CHISC's registered agent for service of process is Corporation Service Company, 315 High Street, Frankfort, KY 40601.

5. Defendant Esquire, Inc. d/b/a Dolphie's Lounge ("Dolphie's") is a Kentucky corporation with a principal place of business in the State of Kentucky. Defendant Dolphie's registered agent for service of process is Ronaldlette Litchford, who may be served at 458 Old Lovers Ln., Bowling Green, KY 42103.

6. Bradley Donald Bunger, deceased, was at all times relevant a resident and citizen of the State of Kentucky. Ronann Bunger is the Administratrix of the Estate of Bradley Donald Bunger (the "Estate"). Ronann Bunger may be served at 716 Steeplechase Way, Bowling Green, KY 42103.

7. Defendant Ronann Bunger, as Mother, Next Friend, Conservator and Guardian of B.C.B., B.C.B., and B.C.B., minor children, is and was at all times relevant a resident and citizen of the State of Kentucky. Ronann Bunger may be served at 716 Steeplechase Way, Bowling Green, KY 42103.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because:

   a. Complete diversity exists between Plaintiff RNIC and the Defendants; and

   b. The amount in controversy in this matter exceeds the sum or value of $75,000, exclusive of interest and costs, as detailed below.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

10. This Court also has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. § 2201.

## UNDERLYING LITIGATION

11. On April 17, 2025, the Estate and Ronann Bunger, as Mother, Next Friend, Conservator and Guardian of B.C.B., B.C.B., and B.C.B., minor children (collectively "Underlying Plaintiffs") filed a Complaint in Warren Circuit Court, identified as Civil Action No. 25-CI-00667 (the "Underlying Litigation"), naming Madhuba, Dolphie's, Choice, and CHISC (the "Underlying Defendants"), and seeking compensatory damages, punitive damages, costs, and pre- and post-judgment interest. A copy of that Complaint is attached hereto and identified as Exhibit A.

12. On December 15, 2025, the Warren Circuit Court granted the Underlying Plaintiffs' Motion to File an Amended Complaint. A copy of the Underlying Plaintiffs' First Amended Complaint (the "Underlying Complaint") is attached hereto and identified as Exhibit B. Underlying Plaintiffs' First Amended Complaint is the currently operative pleading in the Underlying Litigation.

13. The Underlying Complaint alleges that Madhuba operates a Quality Inn hotel located at 4646 Scottsville Road, Bowling Green, Kentucky 42104. (Exhibit B at ¶ 7).

14. The Underlying Complaint alleges that Dolphie's is a licensed server of alcohol that operates a bar within the Quality Inn. (Exhibit B at ¶¶ 7, 12-13).

15. The Underlying Complaint alleges that Choice is a franchisor of the Quality Inn. (Exhibit B at ¶ 8).

16. The Underlying Complaint alleges that CHISC is a franchisor of the Quality Inn. (Exhibit B at ¶ 9).

17. The Underlying Complaint alleges that, on February 22, 2025, Bradley Bunger was a patron at Dolphie's, where he was served alcohol and became intoxicated. (Exhibit B at ¶ 15).

18. The Underlying Complaint alleges that Timmy Cowles ("Cowles") was also a patron at Dolphie's on February 22, 2025, and became intoxicated while there. (Exhibit B at ¶¶ 19, 39).

19. The Underlying Complaint alleges that, while on Dolphie's premises, a physical altercation arose between Cowles and Bunger, and Cowles struck Bunger, causing Bunger to fall to the ground and hit his head. (Exhibit B at ¶ 21).

20. The Underlying Complaint alleges that Bunger later died as a result of the injuries he sustained. (Exhibit B at ¶ 24).

21. Upon information and belief, the Underlying Complaint seeks damages from Madhuba in an amount of the full limits of liability of Madhuba's policies issued by RNIC, which exceeds $75,000.

22. On November 20, 2025, Choice tendered defense and indemnity of the claims asserted against it in the Underlying Complaint to Madhuba, pursuant to the Franchise Agreement

between Madhuba and Choice. A copy of Choice's tender is attached hereto as Exhibit C, and a copy of the Franchise Agreement is attached hereto as Exhibit D.

23. Choice's tender letter demands that Madhuba "assume and control the defense of [the Underlying Complaint] and to engage counsel reasonably acceptable to Franchisor, and to provide Franchisor with prompt notice and ongoing cooperation. . . Choice demands that Franchisee indemnify and hold Choice harmless from any and all liabilities, damages, costs, settlements, and judgments related to the Claim, including reasonable attorneys' fees and costs incurred by Choice." (Exhibit C at RNIC_0001-RNIC_0003).

24. Madhuba provided RNIC with a copy of Choice's November 20, 2025, correspondence, and on February 19, 2026, RNIC sent a response to Choice's tender (attached hereto as Exhibit E, RNIC_0040-RNIC_0056), stating:

> Your November 20, 2025 correspondence is not an unconditional tender, as is required by the Policies. As such, RNIC must reject Choice's tender at this time. In the event Choice submits an unconditional tender of defense to RNIC, RNIC will evaluate whether that tender meets the Policies' requirements.

25. On April 27, 2026, Choice and CHISC sent further correspondence to RNIC, again demanding that RNIC provide them with an "unqualified defense" in the Underlying Litigation. (Exhibit F at RNIC_0057 - RNIC_0058).

26. On August 5, 2026, RNIC responded to Choice and CHISC rejecting this second conditional tender of defense. (Exhibit G at RNIC_0059 - RNIC_0061).

27. As of the date of filing of this action, RNIC has not received an unconditional tender of defense from Choice or CHISC.

28. RNIC is currently providing Madhuba with a defense in the Underlying Litigation, subject to a reservation of rights. RNIC sent correspondence to Madhuba on April 30, 2025; May 30, 2025; and February 23, 2026, explaining the bases for the reservation of rights, including the

RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement. Copies of that correspondence are attached hereto as Exhibit H.

## THE POLICIES

29. RNIC issued a Commercial General Liability insurance policy to Madhuba pursuant to policy number RN-7-0508166, effective November 22, 2024, to November 22, 2025 (the "RNIC Primary Policy"). A copy of the RNIC Primary Policy is attached hereto as Exhibit I. The RNIC Primary Policy is subject to a limit of liability of $1,000,000 for each occurrence. (Exhibit I at RNIC_0090).

30. The RNIC Primary Policy includes Commercial General Liability Coverage Form CG 00 01 04 13 (Exhibit I at RNIC_0098-RNIC_0113), which provides in relevant part:

> SECTION I – COVERAGES
>
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" and "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; . . .
>
> . . .

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

. . .

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";
         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";
         (c) Notify any other insurer whose coverage is available to the indemnitee; and
         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

. . .

31. The RNIC Primary Policy includes an Exclusion – Liquor Liability Endorsement RNGL 1042 1021 (Exhibit I at RNIC_0153), which provides in relevant part:

SECTION I – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY Paragraph 2. Exclusions c. Liquor Liability is deleted and replaced with the following:

c. Liquor Liability

This insurance does not apply to any claim, "suit", "bodily injury", "property damage", "personal or advertising injury", loss, "injury", damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising out of, in any way related to, or in any way involving:

1. Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

. . .

4. Any act or omission by any insured, any "employee" of any insured, patrons, members, associates, volunteers or any other person providing or failing to provide transportation, detaining or failing to

detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol; or

5. The negligent hiring, employment, training, placement or supervision of any person doing work for or otherwise acting on behalf of any insured.

. . .

32. The RNIC Primary Policy includes an Assault, Battery and Abuse Sublimit – Expense Within Limits Endorsement RNGL 1037 0923 (Exhibit I at RNIC_0171-RNIC_0173), which provides in relevant part:

SCHEDULE A – Coverage Form(s) and Sublimit(s)

| Applicable Coverage Form | Sublimit(s) of Insurance | |
|---|---|---|
| Commercial General Liability | PER OCCURRENCE: | $50,000 |
| | AGGREGATE: | $50,000 |
| Liquor Liability | PER COMMON CAUSE: | N/A |
| | AGGREGATE: | N/A |

A. The amounts shown in SCHEDULE A above are the most we will ever pay for “claims expense” and sums that the insured becomes legally obligated to pay as damages because of “bodily injury”, “property damage”, “personal and advertising injury”, loss, “injury”, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving “assault and battery”, whether provoked or unprovoked, including but not limited to:

1. “Assault and battery” between two or more persons, whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured’s employees, agents, patrons, customers, or any other person arising, and from any cause whatsoever;
2. The prevention or suppression, or the failure to suppress or prevent any “assault, and battery”;
3. The failure to provide any environment safe from any “assault and battery”, the failure to provide adequate security, or the failure to warn of the dangers of the environment that could contribute to any “assault and battery”;

4. The reporting or failure to report to the proper authorities;
5. Conducting or failing to conduct an investigation of any "assault and battery";
6. Providing or failing to provide first aid, medical treatment or otherwise handling or responding after there has been an "assault and battery";
7. Caused by, arising out of or resulting from the intoxication of any person;
8. The negligent hiring, employment, training, supervision, or retention by the insured of anyone regarding items 1. through 7. above.

This endorsement applies regardless of fault or intent, and regardless of the particular cause of action pled against an insured. This endorsement applies to any claim or "suit" where any actual or alleged injury or damage arises out of a chain of events that includes "assault and battery", sexual abuse, sexual assault, sexual harassment, intimidation, verbal abuse, harmful or offensive conduct, or threat, regardless of whether any other actual or alleged cause contributed concurrently, initially, efficiently, proximately, or in any other sequence to such claim, "suit", "bodily injury", "property damage", "personal and advertising injury", loss, "injury", damage, cost or expense. This endorsement applies regardless of whether anyone was actually or allegedly acting in self-defense.

This exclusion applies regardless of any other provision in the policy to the contrary.

B. For purposes of this endorsement, the following definitions are added:

1. "Assault and battery" means assault, battery, harmful or offensive contact or threat, sexual abuse, sexual assault, sexual harassment, intimidation, verbal abuse, or any harmful or offensive contact between two or more persons, whether provoked or unprovoked, including but not limited to the ownership, sale, rental, maintenance, use or discharge of any "firearm" or "weapon" by anyone.

. . .

4. "Claims expense" means reasonable and necessary legal fees and expenses incurred by us or by an attorney appointed by us to investigate and/or defend any insured in connection with a covered claim or potential claim. "Claims expense" shall include investigations, adjustment and legal expenses, interests and fees, including court costs and premiums on bonds. "Claims expense" does not include salaries of our regular employees.

C. The Sublimit(s) of Insurance listed in SCHEDULE A is (are) not in addition to the Limits of Insurance shown in the Commercial General Liability Declarations or the Liquor Liability Coverage Declarations, but specifically sublimit and replace the Limits of Insurance shown in those Declarations.

Any "claims expense" arising from any claim or "suit" to which this endorsement applies and incurred by us shall be included within the Sublimit(s) of Insurance in the above SCHEDULE A and shall not be paid in addition to such Sublimit(s) of Insurance. Our duty to defend any claim or "suit" or to pay any settlement or judgment or defense costs ends after we have paid our applicable Sublimit of Insurance as set forth in the above SCHEDULE A. All "claims expense" shall first be subtracted from the Sublimit(s) of Insurance with the remainder, if any, being the amount available to pay damages. If the applicable Sublimit(s) of Insurance is exhausted by the payment of settlements, judgments, awards and/or defense costs prior to final settlement, judgment or award, we shall have the right to withdraw from any further defense by tendering control of the defense of the "suit" to you. Any payments made under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B will reduce the Sublimit(s) of Insurance.

. . .

33. RNIC issued a Commercial Excess Liability Policy to Madhuba pursuant to policy number RN-7-0508172, effective November 22, 2024, to November 22, 2025 (the "RNIC Excess Policy"). A copy of the RNIC Excess Policy is attached hereto as Exhibit J. The RNIC Excess Policy is subject to a limit of liability of $5,000,000 for each occurrence. (Exhibit J at RNIC_0186).

34. The RNIC Excess Policy includes Commercial Excess Liability Form RNXC 1000 0923 (Exhibit J at RNIC_0192-RNIC_0239), which provides in relevant part:

SECTION I – EXCESS LIABILITY INSURANCE COVERAGE

INSURING AGREEMENT

We will pay those sums in excess of the Limits of Insurance of "underlying insurance(s)" that you become legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence, or personal and advertising injury caused by an offense, to which this insurance applies, provided that such damages would be covered by the "underlying insurance(s)" but for the exhaustion of the applicable Limits of Insurance of such "underlying insurance(s)".

. . .

This policy shall follow the terms, definitions, conditions, and exclusions of the "underlying insurance(s)", subject to the policy period, policy limits, premiums and all other terms, definitions, conditions, and exclusions of this policy. However, if any of the provisions of the "underlying insurance(s)" conflict with any provisions of this policy, the provisions of this policy will apply.

This policy will not in any event provide broader coverage than that provided by the "underlying insurance(s)".

. . .

SECTION II – LIMITS OF INSURANCE

Regardless of the number of insureds under this policy, persons or organizations who sustain bodily injury, property damage or personal and advertising injury, claims made or suits brought, our liability is limited as follows:

a. The Limits of Insurance under this policy apply only when the total applicable limits of the "underlying insurance(s)" have been exhausted by the payment of settlements, judgments and any costs or expenses subject to such limit. If any "underlying insurance(s)" is subject to a sublimit, this insurance shall not drop down as excess of such sublimit; however, the applicable limits of the "underlying insurance(s)" shall be reduced to the extent of any payment subject to such sublimit under such "underlying insurance(s)".

. . .

SECTION IV – DEFINITIONS

Unless defined below or elsewhere in this policy, terms that are defined in "underlying insurance(s)" shall have the same meaning in this policy.

a. "Primary insurance" means the "underlying insurance(s)" listed as "primary insurance" in the Schedule of Underlying Insurance forming a part of this policy.

b. "Underlying insurance(s)" means:

   All policies or self-insurance, including the "primary insurance" listed in the Schedule of Underlying Insurance, and any replacements or renewals of them, provided that such replacement or renewal policy(ies) provide coverage equivalent to and afford limits of insurance equal to or greater than the policy(ies) being renewed or replaced.

. . .

35. The RNIC Excess Policy includes a Combined Policy Exclusions Endorsement RNXC 1001 1122 (Exhibit J at RNIC_0200-RNIC_0202), which provides in relevant part:

> VIII. SUBLIMITED COVERAGES EXCLUSION
>
> This insurance does not apply to any claim, suit, loss, injury, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising out of, in any way related to, or in any way involving any "sublimit of liability" afforded under any "underlying insurance(s)" unless coverage for such "sublimit of liability" is specifically endorsed onto this policy.
>
> "Sublimit of liability" means a liability limit in an insurance policy for a particular risk or specific type of loss that is below the aggregate limit of the insurance policy, regardless of whether the sublimit of liability is part of, in addition to or separate from any per-occurrence, per-claim and/or aggregate limit of liability.
>
> . . .

36. The RNIC Excess Policy includes a Liquor Liability Exclusion Endorsement RNXC 1085 0622 (Exhibit J at RNIC_0218), which provides in relevant part:

> This insurance does not apply to any claim, suit, bodily injury, property damage, personal and advertising injury, loss, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising out of, in any way related to, or in any way involving:
>
> 1. Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;
>
> . . .
>
> 4. Any act or omission by any insured, any "employee" of any insured, patrons, members, associates, volunteers or any other person providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol; or

5. The negligent hiring, employment, training, placement or supervision of any person doing work for or otherwise acting on behalf of any insured.

. . .

37. The RNIC Excess Policy includes an Exclusion – Assault, Battery, Abuse and Related Conduct Endorsement RNIL 1019 0923 (Exhibit J at RNIC_0219-RNIC_0220), which provides in relevant part:

I. This insurance does not apply to any claim, "suit", loss, injury, damage, cost or expense whether actual or alleged, in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving "assault and battery", whether provoked or unprovoked.

This exclusion includes but is not limited to:

a. "Assault and battery" between two or more persons, whether caused by, or at the instigation, instruction, direction or due to the negligence of the insured, the insured's employees, agents, patrons, customers, or any other person arising, and from any cause whatsoever;

b. The prevention or suppression, or the failure to suppress or prevent any "assault, and battery";

c. The failure to provide any environment safe from any "assault and battery", the failure to provide adequate security, or the failure to warn of the dangers of the environment that could contribute to any "assault and battery";

d. The reporting or failure to report to the proper authorities;

e. Conducting or failing to conduct an investigation of any "assault and battery";

f. Providing or failing to provide first aid, medical treatment or otherwise handling or responding after there has been an "assault and battery";

g. Caused by, arising out of or resulting from the intoxication of any person.

h. Caused by, arising out of or resulting from false arrest, detention or imprisonment.

i. The negligent hiring, employment, training, supervision, or retention by the insured of anyone regarding items a. through h. above.

This exclusion applies regardless of fault or intent, and regardless of the particular cause of action pled against an insured. This endorsement applies to any claim or "suit" where any actual or alleged injury or damage arises out of a chain of events that includes "assault and battery", sexual abuse, sexual assault, sexual harassment, intimidation, verbal abuse, harmful or offensive conduct, or threat, regardless of whether any other actual or alleged cause contributed concurrently, initially, efficiently, proximately, or in any other sequence to such claim, "suit", "bodily injury", "property damage", "personal and advertising injury", loss, "injury", damage, cost or expense. This endorsement applies regardless of whether anyone was actually or allegedly acting in self-defense.

This exclusion applies regardless of any other provision in the policy to the contrary.

II. For purposes of this endorsement, the following definitions are added:

a. "Assault and battery" means assault, battery, harmful or offensive contact or threat, sexual abuse, sexual assault, sexual harassment, intimidation, verbal abuse, or any harmful or offensive contact between two or more persons, whether provoked or unprovoked, including but not limited to the ownership, sale, rental, maintenance, use or discharge of any "firearm" or "weapon" by anyone.

. . .

**COUNT I**

38. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

39. The RNIC Primary Policy's Commercial General Liability Coverage Form provides that RNIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Exhibit I at RNIC_0098).

40. The RNIC Primary Policy is also subject to a Liquor Liability Exclusion Endorsement, which provides that this insurance does not apply to any claim, suit, loss, or bodily injury "in any way based upon, directly or indirectly arising out of, in any way related to, or in any way involving" the causing or contributing to the intoxication of any person, any insured's failure to supervise or care for a person under the influence of alcohol, or the negligent hiring, training, employment, placement, or supervision of any person doing work for or otherwise acting on behalf of the insured. (Exhibit I at RNIC_0153).

41. The Underlying Complaint alleges that Bradley Bunger consumed alcoholic beverages at Dolphie's prior to the altercation that led to his death; that the Underlying Defendants were negligent in failing to protect invitees and patrons from foreseeable injuries; that Dolphie's and Madhuba were negligent in providing security to protect invitees and patrons from third-party criminal acts; and that all these caused the Underlying Plaintiffs to suffer harm and damages, including Bradley Bunger's death. (Exhibit B at ¶¶ 15, 29-30, 44, 49).

42. Based on the foregoing, RNIC seeks a declaration stating that the RNIC Primary Policy's Commercial General Liability Coverage provides no coverage for the claims asserted in the Underlying Litigation, and RNIC has no duty to defend or indemnify Madhuba, Choice, CHISC, or any other party under the RNIC Primary Policy's Commercial General Liability Coverage on this basis.

**COUNT II**

43. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

44. The RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement provides that RNIC will pay $50,000 per occurrence for claims expenses and sums the insured

becomes legally obligated to pay as damages because of bodily injury, loss, injury, or damage "whether actual or alleged, in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving 'assault and battery'[,]" including the failure to provide any environment safe from any "assault and battery" or the failure to provide adequate security. (Exhibit I at RNIC_0171-RNIC_0173).

45. The RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement provides that the sublimit identified therein is "not in addition to the Limits of Insurance shown in the Commercial General Liability Declarations or the Liquor Liability Coverage Declarations, but specifically sublimit and replace the Limits of Insurance shown in those Declarations." (Exhibit I at RNIC_0171-RNIC_0173).

46. The RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement defines "assault and battery," in relevant part, as harmful or offensive contact. (Exhibit I at RNIC_0171-RNIC_0173).

47. The RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement defines "claims expense," in relevant part, as "reasonable and necessary legal fees and expenses incurred by us or by an attorney appointed by us to investigate and/or defend any insured in connection with a covered claim or potential claim." (Exhibit I at RNIC_0171-RNIC_0173).

48. The RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement provides that "[i]f the applicable Sublimit(s) of Insurance is exhausted by the payment of settlements, judgments, awards and/or defense costs prior to final settlement, judgment or award, we shall have the right to withdraw from any further defense by tendering control of the defense of the 'suit' to you." (Exhibit I at RNIC_0171-RNIC_0173).

49. The Underlying Complaint alleges that Bradley Bunger was involved in a physical altercation with Timmy Cowles that led to Bunger's death. (Exhibit B at ¶¶ 21-24).

50. Based on the foregoing, RNIC seeks a declaration stating that the RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement applies to the claims asserted in the Underlying Litigation, and RNIC's duty to defend or indemnify Madhuba, Choice, CHISC, or any other party under the RNIC Primary Policy's Assault, Battery and Abuse Sublimit Endorsement is limited to the $50,000 sublimit identified therein, which includes "claims expense."

51. Further, based on the foregoing, RNIC seeks a declaration stating that it may withdraw the defense it has provided to Madhuba, Choice, CHISC, or any other party in this matter upon exhaustion of the RNIC Primary Policy's Assault, Battery and Abuse Sublimit.[1]

**COUNT III**

52. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

53. The RNIC Excess Policy includes an Assault, Battery, Abuse and Related Conduct Endorsement, which provides in relevant part that this insurance does not apply to "any claim, 'suit', loss, injury, damage, cost, or expense whether actual or alleged, in any way based upon, directly or indirectly arising from, in any way related to, or in any way involving 'assault and battery'[,]" including the failure to provide any environment safe from any "assault and battery" or the failure to provide adequate security. (Exhibit J at RNIC_0219-RNIC_0220).

54. The Assault, Battery, Abuse and Related Conduct Endorsement defines "assault and battery," in relevant part, as harmful or offensive contact. (Exhibit J at RNIC_0219-RNIC_0220).

[1] As of August 13, 2026, $20,678.40 of the RNIC Primary Policy's $50,000 Assault, Battery and Abuse Sublimit has been expended upon claims expenses incurred in the defense of Madhuba in the Underlying Litigation.

55. The Underlying Complaint alleges that Bradley Bunger was involved in a physical altercation with Timmy Cowles that led to Bunger's death. (Exhibit B at ¶¶ 21-24).

56. Based on the foregoing, RNIC seeks a declaration stating that the RNIC Excess Policy's Assault, Battery, Abuse and Related Conduct Endorsement precludes coverage under the RNIC Excess Policy for any claims asserted in the Underlying Litigation, and RNIC has no duty to defend or indemnify Madhuba, Choice, CHISC, or any other party in the Underlying Litigation under the RNIC Excess Policy on this basis.

**COUNT IV**

57. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

58. The RNIC Excess Policy includes a Liquor Liability Exclusion Endorsement, which provides that this insurance does not apply to "any claim, suit, bodily injury, property damage, personal and advertising injury, loss, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising out of, in any way related to, or in any way involving" the causing or contributing to the intoxication of any person, any insured's failure to supervise or care for a person under the influence of alcohol, or the negligent hiring, training, employment, placement, or supervision of any person doing work for or otherwise acting on behalf of the insured. (Exhibit J at RNIC_0218).

59. The Underlying Complaint alleges that Bradley Bunger consumed alcoholic beverages at Dolphie's prior to the altercation that led to his death; that the Underlying Defendants were negligent in failing to protect invitees and patrons from foreseeable injuries; that Dolphie's and Madhuba were negligent in providing security to protect invitees and patrons from third-party

criminal acts; and that all these caused the Underlying Plaintiffs to suffer harm and damages, including Bradley Bunger's death. (Exhibit B at ¶¶ 15, 29-30, 44, 49).

60. Based on the foregoing, RNIC seeks a declaration stating that the RNIC Excess Policy's Liquor Liability Exclusion Endorsement precludes coverage for the claims asserted in the Underlying Litigation, and RNIC has no duty to defend or indemnify Madhuba, Choice, CHISC, or any other party under the RNIC Excess Policy on this basis.

**COUNT V**

61. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

62. The RNIC Excess Policy includes a Combined Policy Exclusions Endorsement, which provides that this insurance does not apply to "any claim, suit, loss, injury, damage, cost or expense, whether actual or alleged, in any way based upon, directly or indirectly arising out of, in any way related to, or in any way involving any 'sublimit of liability' afforded under any 'underlying insurance(s)' unless coverage for such 'sublimit of liability' is specifically endorsed onto this policy." (Exhibit J at RNIC_0200-RNIC_0202).

63. The RNIC Excess Policy's Schedule of Underlying Policies does not identify any applicable sublimits to the RNIC Primary Policy. (Exhibit J at RNIC_0198).

64. As discussed above in Count II, any coverage that may be available under the RNIC Primary Policy is subject to the Assault, Battery and Abuse Sublimit. (Exhibit I at RNIC_0171-RNIC_0173).

65. Based on the foregoing, RNIC seeks a declaration stating that the RNIC Excess Policy does not provide coverage to Madhuba, Choice, CHISC, or any other party in the Underlying Litigation because the Assault, Battery and Abuse Sublimit is not endorsed to the

RNIC Excess Policy, and thus RNIC has no duty to defend or indemnify Madhuba, Choice, CHISC, or any other party under the RNIC Excess Policy on this basis.

**COUNT VI**

66. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

67. The RNIC Primary Policy provides that, if RNIC is defending an insured against a “suit” and an indemnitee of the insured is also named as a party to the “suit,” RNIC will defend that indemnitee if, among other conditions, “[t]he indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such ‘suit’ and agree that we can assign the same counsel to defend the insured and the indemnitee[.]” Further, the indemnitee must provide RNIC with written authorization to “conduct and control the defense of the indemnitee in such ‘suit’.” (Exhibit I at RNIC_0106).

68. On November 20, 2025, Choice tendered defense of the Underlying Litigation to Madhuba. (Exhibit C at RNIC_0001-RNIC_0003).

69. The November 20, 2025, tender of defense that Choice provided to Madhuba demands that Madhuba “engage counsel reasonably acceptable to Franchisor[.]” (Exhibit C at RNIC_0002).

70. The November 20, 2025, tender also purports to be “made pursuant to the Franchise Agreement . . . including without limitation the indemnification, defense, and insurance provisions set forth in §§ 12 and 13.” (Exhibit C at RNIC_0002).

71. Based on the foregoing, RNIC seeks a declaration stating that it has no obligation under the RNIC Primary Policy to accept Choice’s November 20, 2025, conditional tender of defense.

**COUNT VII**

72. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

73. The RNIC Primary Policy provides that, if RNIC is defending an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," RNIC will defend that indemnitee if, among other conditions, "[t]he indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such 'suit' and agree that we can assign the same counsel to defend the insured and the indemnitee[.]" Further, the indemnitee must provide RNIC with written authorization to "conduct and control the defense of the indemnitee in such 'suit'." (Exhibit I at RNIC_0106).

74. On April 27, 2026, Choice and CHISC sent an email to RNIC tendering defense and indemnity to RNIC for the Underlying Litigation. (Exhibit F at RNIC_0057 - RNIC_0058).

75. Choice and CHISC's April 27, 2026, tender stated, "Richmond National is obligated to provide Choice with a complete, immediate, and unqualified defense, as well as indemnity for any resulting settlement or judgment, subject only to the terms of the policy." (Exhibit F at RNIC_0057 - RNIC_0058).

76. On August 5, 2026, RNIC responded to Choice and CHISC rejecting this second conditional tender of defense. (Exhibit G at RNIC_0059 - RNIC_0061).

77. As of the date of filing of this action, RNIC has not received an unconditional tender of defense from Choice or CHISC.

78. Based on the foregoing, RNIC seeks a declaration stating that it has no obligation under the RNIC Primary Policy to accept Choice's conditional tenders of defense.

**COUNT VIII**

79. RNIC realleges, reavers, reiterates, and incorporates by reference as if set forth fully herein, each and every averment contained within the preceding paragraphs of this Complaint.

80. As of the date of filing of this Complaint, neither Choice nor CHISC has provided RNIC with an unconditional tender of defense and indemnity for the Underlying Litigation.

81. The RNIC Primary Policy provides that, when a defense is provided to an indemnitee of the insured, RNIC's "obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements[.]" (Exhibit I at RNIC_0106).

82. Based on the foregoing, RNIC seeks a declaration stating that, in the event that Choice and CHISC provide an unconditional tender of defense to RNIC, RNIC's obligation to defend or indemnify Choice and CHISC is limited to the RNIC Primary Policy's $50,000 Assault, Battery and Abuse Sublimit, and RNIC has no obligation to defend or indemnify Choice or CHISC once that sublimit is exhausted.

83. Further, based on the foregoing, RNIC seeks a declaration stating that, in the event that Choice and CHISC provide an unconditional tender of defense to RNIC, any amount of the RNIC Primary Policy's $50,000 Assault, Battery and Abuse Sublimit that has not been exhausted should be divided equally between Madhuba and its indemnitees to whom RNIC may be providing a defense.[2]

WHEREFORE, the Plaintiff, RNIC, prays the Court as follows:

---

[2] As of August 13, 2026, $20,678.40 of the RNIC Primary Policy's $50,000 Assault, Battery and Abuse Sublimit has been expended upon claims expenses incurred in the defense of Madhuba in the Underlying Litigation.

1. For entry of a judgment from this Court that the RNIC Primary Policy's Liquor Liability Exclusion Endorsement precludes any coverage under the RNIC Primary Policy's Commercial General Liability Coverage Form for the allegations asserted in the Underlying Litigation;

2. For entry of a judgment from this Court that the only coverage available under the RNIC Primary Policy for the allegations asserted in the Underlying Litigation is the $50,000 Assault, Battery and Abuse Sublimit;

3. For entry of a judgment from this Court that the RNIC Excess Policy's Assault, Battery, Abuse and Related Conduct Exclusion Endorsement precludes any coverage under the RNIC Excess Policy for the allegations asserted in the Underlying Litigation;

4. For entry of a judgment from this Court that the RNIC Excess Policy's Liquor Liability Exclusion Endorsement precludes any coverage under the RNIC Excess Policy for the allegations asserted in the Underlying Litigation;

5. For entry of a judgment from this Court that the RNIC Excess Policy's Combined Policy Exclusions Endorsement precludes any coverage under the RNIC Excess Policy for the allegations asserted in the Underlying Litigation;

6. For entry of a judgment from this Court that Choice and CHISC have not provided RNIC with an unconditional tender of defense and indemnity, and thus RNIC has no obligation to defend or indemnify Choice or CHISC in the Underlying Litigation at this time;

7. For entry of a judgment from this Court that the RNIC Primary Policy's $50,000 Assault, Battery and Abuse Sublimit applies to both Madhuba and any indemnitee of Madhuba to which RNIC provides a defense in the Underlying Litigation;

8. For entry of a judgment from this Court that, in the event that Choice and CHISC provide RNIC with an unconditional tender, the remainder of the RNIC Primary Policy's $50,000 Assault, Battery and Abuse Sublimit should be divided equally between Madhuba and its indemnitees to whom RNIC provides a defense;

9. For entry of a judgment from this Court that, upon exhaustion of the RNIC Primary Policy's $50,000 Assault, Battery and Abuse Sublimit in the defense of Madhuba and any of its indemnitees, RNIC may withdraw from the defense of Madhuba and any of its indemnitees in the Underlying Litigation;

10. For an award of its costs sustained herein, including reasonable attorneys' fees;

11. For trial of this case by jury; and

12. For any and all other just and proper relief to which this Court may deem it is entitled.

Respectfully submitted,

FREEMAN, MATHIS & GARY, LLP

*/s/ Sean C. Harrison*

Sean C. Harrison
Barry M. Miller
300 W. Vine St., Suite 1100
Lexington, KY 40507
BMiller@fmglaw.com
Sean.Harrison@fmglaw.com
*Counsel for Plaintiff,*
*Richmond National Insurance Company*